ATTORNEYS FOR APPELLANT
Jeffrey E. Kimmell
Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Aaron J. Spolarich
Ellen H. Meilaender
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Apr 29 2014, 12:18 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 71S04-1308-CR-535

MARTIN MEEHAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D02-1112-FC-286
The Honorable John M. Marnocha, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A04-1209-CR-453

**April 29, 2014**

**David, Justice.**

At Martin Meehan's trial for class C felony burglary, the State offered into evidence, among other things, a glove containing Meehan's DNA recovered at the scene of the burglary. Meehan was subsequently convicted of class C felony burglary, found to be a habitual offender, and sentenced to a total term of thirteen years in the Indiana Department of Correction. On

appeal, he challenges the sufficiency of the evidence underlying his conviction. Finding that Meehan's jury had before it substantial evidence of probative value from which it could have reasonably inferred that Meehan was guilty of burglary beyond a reasonable doubt, we affirm his conviction.

**Facts and Procedural History**

On the afternoon of May 2, 2011, employee Scott Floyd closed and locked an overhead door that opened to a loading dock at the building housing O.J.S. Building Services, a mechanical contracting business. When he arrived at work early the next morning, Floyd observed that a panel of the overhead door had been removed. Entering the building through a locked access door, Floyd discovered two interior doors off their hinges, including the door connecting the loading dock to the offices. Floyd exited the building and called police.

South Bend Police Department Officer Kevin Gibbons was dispatched to the scene. Upon arrival, Officer Gibbons walked through the building with Floyd. Immediately inside of the overhead door, the men found a black glove. Floyd would later testify that the glove was not present when he locked the building on May 2. From the scene, police also collected a screwdriver and a footwear print from one of the interior doors. Among other things, laptops and approximately $1200 in cash were missing.

Subsequently, the glove and the screwdriver were tested for the presence of DNA. Although an insufficient amount of DNA for testing was found on the screwdriver, a stain on the glove tested positive for the presence of saliva or mucus on both the inside and outside of the glove. Entered into a database, the DNA from the glove matched Martin Meehan's DNA. No other person's DNA was found on the glove.

On December 7, 2011, South Bend Police Department Detective Chris Slager spotted Meehan standing with a group of men on a street corner, recognized him from a crime information bulletin, and took him into custody. At the time, Meehan possessed bolt cutters, a

pocket knife, a screwdriver, a chisel, and two Allen key sets. During an interview with police, Meehan denied any involvement with the O.J.S. burglary. Following the interview, he was placed under arrest. Police collected a DNA swab from Meehan, and the DNA from that swab matched the DNA from the glove found inside the O.J.S. building.

The State charged Meehan with class C felony burglary[1] and sought a habitual offender enhancement.[2] Following a jury trial, Meehan was found guilty of the burglary charge. After Meehan waived his right to a jury trial for the habitual offender enhancement, the trial court found him to be a habitual offender. At his sentencing hearing, the trial court sentenced Meehan to five years in the Indiana Department of Correction for the burglary, enhanced by eight years for the habitual offender finding.

On appeal, Meehan argued that the State failed to produce sufficient evidence to establish beyond a reasonable doubt that he committed the O.J.S. burglary.[3][4] Specifically, Meehan contended that it was unreasonable to infer that he committed the burglary "simply because a glove containing his DNA was found at the scene of the crime." (Appellant's Br. at 5.) Concluding that "there was no evidence that would support an inference that Meehan's DNA was found on the glove because he handled it during the burglary, as opposed to some other

---

[1] Ind. Code § 35-43-2-1 (2008).

[2] Ind. Code § 35-50-2-8 (2008).

[3] Meehan also claimed that the trial court erred by ordering his burglary sentence, enhanced by an eight-year habitual offender finding, to run consecutive to his burglary sentence in case number 71D02-0702-FC-37, which was enhanced by a six-year habitual offender finding. The State conceded that remand is appropriate to order the habitual offender enhancement in this case and the remaining habitual offender enhancement in FC-37 to be served concurrently, as "[u]nder Indiana law, a trial court cannot order consecutive habitual offender sentences." Breaston v. State, 907 N.E.2d 992, 994 (Ind. 2009).

[4] Third and finally, Meehan argued that the trial court erred by allowing the State to file a habitual offender charge after the deadline then set forth in Ind. Code § 35-34-1-5(e) (2008) (now Ind. Code § 35-34-1-5(e) (Supp. 2013)). However, we agree with the State that pursuant to Ind. Appellate Rule 9(F)(5), by failing to present on appeal a "complete record of the issues for which an appellant claims error," specifically a transcript from the hearing on the State's motion to amend the charging information, Meehan waived the right to appellate review of this issue. Miller v. State, 753 N.E.2d 1284, 1287 (Ind. 2001).

time," the Court of Appeals found that the burglary verdict was based on speculation and reversed Meehan's conviction. Meehan v. State, 986 N.E.2d 371, 372 (Ind. Ct. App. 2013). We granted transfer, thereby vacating the opinion below. Ind. Appellate Rule 58(A).

**Standard of Review**

When reviewing a claim of insufficient evidence to sustain a conviction, we

> consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. . . . Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. [T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

Drane v. State, 867 N.E.2d 144, 146–47 (Ind. 2007) (internal citations omitted). "A reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." Mediate v. State, 498 N.E.2d 391, 393 (Ind. 1986).

This standard requires us to determine "whether the facts favorable to the verdict represent substantial evidence probative of the elements" of burglary. Drane, 867 N.E.2d at 147. To convict Meehan of class C felony burglary under Ind. Code § 35-43-2-1, the State must have proven, beyond a reasonable doubt, that Meehan broke into and entered the O.J.S. building with the intent to commit a felony within the building. Here, the State charged theft as the underlying felony.[5]

---

[5] Ind. Code § 35-43-4-2(a) (2008) provides, in pertinent part, that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft."

4

**Glove Found at Burglary Scene Sufficient Evidence to Support Meehan's Conviction**

Arguing that a glove is "an item easily lost, found, borrowed or stolen," Meehan claims there was insufficient evidence for the jury to find beyond a reasonable doubt that he committed the O.J.S. burglary. (Appellant's Br. at 8–9.) Although the glove containing his DNA was the only evidence recovered that directly tied Meehan to the burglary, the circumstances under which the glove was discovered, the glove itself, and Meehan's possession of tools potentially used to commit burglary are probative evidence from which an inference reasonably tending to support the guilty verdict could have been drawn.

In Shuemak v. State, we held that a finger, palm, or bare footprint found in a place where a crime was committed may be sufficient proof of the defendant's identity. 254 Ind. 117, 119, 258 N.E.2d 158, 159 (1970). We also consider the defendant's legitimate access to the fingerprinted object, the relocation of the object from its point of origin, and the defendant's authorization to enter the dwelling or structure. Mediate, 498 N.E.2d at 393. It follows that

> [t]he preclusion of legitimate access to the object supports the inference that the fingerprints were not made in a lawful manner. Whether the fingerprinted object was located in a public or private place is an important factor. When [the] defendant's fingerprint is found on an object which was never accessible to the public a reasonable inference arises that the print was made during the crime.

Id. at 394.

Like a fingerprint, DNA is a marker of identity. Therefore, Meehan's jury could have found the glove containing Meehan's DNA, together with other evidence offered by the State, to be sufficient proof of Meehan's identity as the burglar. Discovered near the damaged overhead door, the glove was located mere steps from the burglar's point of entry. "A fingerprint found at the point of entry is accorded substantial weight because of its direct relationship to the element of illegal entry." Id. Thus, the jury could reasonably have inferred that the glove was dropped

by Meehan upon entering or exiting the O.J.S. building through the panel of the overhead door he had removed.

Moreover, there was no more obvious explanation for the glove's presence at the scene. The glove had not been there when Floyd locked the building the previous night, O.J.S. had no customer retail component, and Meehan had neither an employment nor business relationship with O.J.S. Given Meehan's lack of legitimate access or authorization to enter the O.J.S. building, the jury could have reasonably inferred that Meehan left the glove in the course of committing the burglary.

Yet Meehan contends that "while one may reasonably infer that a fingerprint left at the scene of a burglary establishes the identity of the burglar, the same cannot be said of DNA found in or on a glove located at the scene." (Appellant's Br. at 9.) According to Meehan, this is because "DNA can be transferred to an item very easily," thus making it possible that "the glove found at the scene could have been left by any person who found, borrowed or stole it from [him]." (Appellant's Br. at 9.) To this point, we agree. Or, as he also argues, Meehan "could have very easily transferred his DNA to another person's glove at some point prior to the burglary by a casual touching." (Appellant's Br. at 9.) Again, we agree.

But the Court of Appeals reasoned that "[w]ere we to affirm [Meehan's conviction], we would be creating a precedent that would make it relatively easy for criminals to frame other individuals; all they would need to do is obtain an object with someone else's DNA and leave it at the crime scene." Meehan, 986 N.E.2d at 376. Here is where we disagree. The existence of the possibility of being "framed" does not amount to a lack of substantial evidence of probative value from which the jury could reasonably infer that Meehan committed the burglary. In reviewing sufficiency claims, we look at what evidence *was* presented to the jury, not at what evidence was *not* presented.

Our precedent requires us to look at all the evidence presented in a light most favorable to the verdict. Given the presence of Meehan's DNA on the glove, Officer Gibbons's

6

uncontroverted testimony that the glove was discovered only steps from the point of entry of a secured building, Meehan's lack of authorization to enter to the O.J.S. building, and Meehan's possession of potential burglary tools, we conclude that it was reasonable for the jury to infer that Meehan's DNA was on the glove because he was wearing it at the time of the burglary. In the process, the jury necessarily rejected alternative explanations for the presence of both Meehan's DNA and the glove.

Meehan also argues that "[t]he [S]tate's lack of evidence is especially disturbing where police recovered a viable footwear print from a broken door inside the premises and failed to make any comparisons" to his footwear. (Appellant's Br. at 9.) Whether such a comparison may have helped either side, we will never know. Under Drane, what is required to sustain the verdict is a reasonable inference of guilt drawn from probative evidence. A glove containing Meehan's DNA discovered at the scene of a burglary just steps from the point of entry and in an area Meehan had no right to be, together with his possession of potential burglary tools, is sufficient evidence to support his conviction for burglary.

## Conclusion

Because there was substantial evidence of probative value from which the jury could reasonably infer that Meehan was guilty of burglary beyond a reasonable doubt, we will not disturb the jury's verdict. Additionally, because consecutive habitual offender enhancements are prohibited, we remand to the trial court with instructions to order the habitual offender enhancement in this case be served concurrent to the remaining habitual offender enhancement in FC-37.

Dickson, C.J., Rucker, Massa, and Rush, JJ., concur.

7