**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 12 2014, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SERGIO POITAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1311-CR-512 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1212-FB-42

**August 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

While Dylan Drake was asleep at his grandmother's house, Sergio Poitan entered the house and stole approximately $600 in cash out of Dylan's wallet, which was in his boot. Poitan was found guilty by a jury of Count I: Class B felony burglary and Count II: Class D felony theft. The trial court sentenced him to twelve years on Count I, with two years suspended to probation, and two years on Count II. The court ordered the sentences to be served concurrently, for an aggregate term of ten years. Poitan now appeals, arguing that the evidence is insufficient to support his convictions and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding the evidence sufficient to support his convictions and that Poitan's sentence is not inappropriate, we affirm the trial court.

**Facts and Procedural History**

December 12, 2012, was payday for Dylan Drake. Tr. p. 18-19. At 5:30 p.m. that day Dylan ended his shift at his day job at Christian Electric in Shelbyville and went to cash his paycheck in the amount of $733.33 at "Check Into Cash." *Id*. at 19; State's Ex. 8. Dylan then paid a few bills, leaving him with $600 to $630 cash in his wallet, and went to work his evening job. Tr. p. 19-20. Around 11:00 p.m. Dylan finished working at his second job and drove to the house of his eighty-five-year-old grandmother, Martha Drake ("Grandmother"), to spend the night. *Id*. at 20. Grandmother, who suffered from Alzheimer's disease and dementia, was in the house asleep. *Id*. at 21. Once at Grandmother's house, Dylan locked the front door behind him, placed his wallet in his boot, and went to bed in his room at the back of the house. *Id*. at 21-24. Dylan's boots

2

were right next to his bed.  The next morning, however, Dylan's wallet was not in his boot.  *Id*. at 23, 25.  After searching for his wallet without success, Dylan eventually went to work.  *Id*. at 25.  Later that day Grandmother called and informed Dylan that she had found his wallet on the kitchen counter, but there was no cash inside.  *Id*. at 25-26.  Grandmother also told him that the dead-bolted back door to the house had been opened.  *Id*.  But because there was a broken key in the lock for that door, there was no way the door could be opened from the outside; therefore, the door had to be left open by going out, not coming in.  *Id*. at 27.  There was no sign of forced entry into the house.  *Id*. at 151.

On that same night of December 12, Laura Beals,[1] Cody Johnson, Kayla,[2] and Poitan were hanging out at Cody's house.  *Id*. at 47.  At the time, Cody was on house arrest and was wearing a GPS ankle bracelet.  *Id*. at 67, 105.  Cody did not leave his house that night.  *Id*. at 112-13.  Kayla left at some point during the evening; however, the rest of the group slept at Cody's house.  *Id*. at 48-49.  Before everyone went to bed, Poitan set his alarm for 3:00 a.m., stating "he had some business to do."  *Id*. at 49-50.  Around 4:00-5:00 a.m. Laura was awakened by "the door slamming open."  Laura stated that when Poitan entered the house he was "really excited" and had "a bunch of money[,] like showing off [the] money and wow look at all this money I got."  *Id*. at 51.  According to Laura, there was $600 or more in Poitan's possession, and when she asked Poitan where he got the money, Poitan replied his "friend," Dylan.  *Id*. at 52-54.  Poitan then told Laura that he had entered Grandmother's house and taken the money from Dylan's wallet.  *Id*. at 55-56.

---

[1] Laura Beals is also referred to as Laura Tucker in the transcript.  Tucker is her maiden name, and she is Corey Tucker's sister.  Tr. p. 45-46.

[2] Kayla's last name is not reflected in the transcript.  Tr. p. 47.

3

Poitan explained that he had left the house using the back door, but he did not tell her how he entered the house. *Id*. at 56. Poitan then asked Laura to take a picture of the money, which she did; a few minutes later, at the request of Poitan, the picture of the money was posted on Cody's Facebook page. *Id*. at 58. The cigarettes and lighters Poitan had purchased with money on his way back to Cody's house were also in the picture. *Id*. at 59. Poitan then left Cody's house and went to purchase spice using Dylan's money. *Id*. at 61. Because of previous interactions with Dylan, Poitan was aware that Dylan would be paid on December 12. *Id*. at 40, 56.

The next day Laura told her brother, Corey Tucker, what happened and sent him the picture of the money. *Id*. at 63, 93. Corey, who was good friends with Dylan, then contacted Dylan, explained everything that Laura had told him, and said that he had "proof picture[-]wise" that implicated Poitan. *Id*. at 93-94. Laura and Corey each sent the picture of the money to Dylan. *Id*. at 66. That same day Laura, Corey, and Dylan went to the police station together and were each interviewed by Detective Deborah Tilford of the Shelbyville Police Department. *Id*. at 67, 159. After an investigation, Poitan was arrested. *Id*. at 158, 171; Appellant's App. p. 84.

The State charged Poitan with Count I: Class B felony burglary and Count II: Class D felony theft. At trial, two of Poitan's jail-mates from the Shelby County Jail testified about information concerning the robbery that Poitan had shared with each of them. Robert Elliott was in the same jail block as Poitan. Tr. p. 116. Robert testified that Poitan "basically said what he had done . . . just kinda braggin[g] . . . he had a picture of [the] money he said he took from . . . the guy." *Id*. at 117. Robert also stated that Poitan showed

4

him a picture of the money and said that he had taken the money to his friend's house and put it on his friend's Facebook page. *Id*. at 119. Although there were some differences in his story compared to testimony from other witnesses, Robert knew many of the specifics concerning Poitan's burglary and theft and stated that Poitan had admitted to the crime and shared details about his case with Robert "numerous times." *Id*. at 120. Robert also had a chance to read Poitan's "papers," which were documents that contained details about Poitan's case. *Id*. at 121, 127. Sammie Stubbs was also in the same jail block as Poitan. *Id*. at 135. Sammie testified that Poitan bragged about his case and discussed details of his case with him. *Id*. at 136. Sammie further testified that Poitan "pretty much just said that . . . he broke into the rear of the house. . . . I guess Dylan Drake was passed out asleep and . . . he stole . . . $500 from his wallet."[3] *Id*. at 137. Sammie also had been told that during the course of the burglary Grandmother woke up and walked around the house, unaware that Poitan was there, and Poitan "didn't get caught so he left." *Id*. at 137, 224. Poitan also told Sammie that he took a picture of the money and posted in on Facebook. *Id*. at 140. Sammie, like Robert, had a chance to read Poitan's "papers," but he stated that his testimony was only from his memory of what Poitan had told him, because otherwise, "I'd

---

[3] The evidence is unclear on which door Poitan used to enter Grandmother's house. However, Poitan was very familiar with the house and had been inside the house on numerous occasions. Tr. p. 39, 88. Poitan did not tell Laura how he entered Grandmother's house but said that he left the house through the back door. *Id*. at 54. Poitan told Robert he entered through the side or laundry door, and Sammie that he broke into the "rear" of the house. *Id*. at 118, 137. At trial, Dylan testified that a key was "broken off" inside the back or side door, "so if its dead bolted . . . or locked period, you can't get in the door." *Id*. at 27. Dylan also testified that the spare key to the house disappeared about a week before the burglary occurred. *Id*. at 32. Although it remains unclear how Poitan entered Grandmother's house, Dylan was the last person to enter Grandmother's house that night and stated that he locked the front door behind him and that the back door was locked when he went to bed. *Id*. at 24.

be able to give great detail about every little thing. I only remember what he told me." *Id.* at 137, 142.

A jury found Poitan guilty of both Count I: Class B felony burglary and Count II: Class D felony theft. At the sentencing hearing the court expressed concern regarding the Pre-Sentence Investigation report's indication that Poitan had an extremely high risk of committing another crime, stating "very rarely have . . . I seen a report that indicates . . . such a significant high risk." *Id.* at 229. The court found the following aggravators: the age and condition of the burglary victim—Dylan's grandmother was eighty-five years old with Alzheimer's disease and dementia—and Poitan was on probation when he committed these crimes. The court gave both of these aggravators significant weight and stated in reference to Poitan being on probation, "I consider that to be of substantial weight . . . because obviously it demonstrates that you really have no regard for the laws . . . that . . . most of us adhere to and . . . you're basically go[ing to] do . . . your own thing." *Id.* at 230. The court identified no mitigators and found that the aggravators supported an enhanced sentence. The court sentenced Poitan to twelve years, with two years suspended to probation for Count I, and two years for Count II. The court ordered the sentences to be served concurrently, for an aggregate term of ten years.

Poitan now appeals.

**Discussion and Decision**

Poitan raises two issues on appeal. First, Poitan contends that there was no direct evidence that he committed the crimes of burglary and theft. Second, Poitan contends that his sentence is inappropriate in light of the nature of the offenses and his character.

# I. Sufficiency of the Evidence

Poitan contends that the evidence is insufficient to support his convictions for burglary and theft. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

To convict Poitan of Class B felony burglary under Indiana Code section 35-43-2-1, the State was required to prove beyond a reasonable doubt that Poitan broke and entered the dwelling of Grandmother, with the intent to commit a felony therein. To convict Poitan of Class D felony theft under Indiana Code section 35-43-4-2, the State was required to prove beyond a reasonable doubt that Poitan knowingly or intentionally exerted unauthorized control over the property of Dylan with intent to deprive Dylan of any part of its value or use.

Poitan argues that there "was no direct evidence that [he] committed burglary and theft," and that the evidence introduced was "not probative to a point where a fact finder could find Poitan guilty beyond a reasonable doubt." Appellant's Br. p. 10, 11. While it may be true that no direct evidence was introduced that Poitan committed burglary of

7

Grandmother's house and theft of Dylan's money, it is well established that a conviction may be based solely on circumstantial evidence. *Hayes v. State*, 876 N.E.2d 373, 375 (Ind. Ct. App. 2007) (citing *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)), *trans. denied*. *See also Baker v. State*, 968 N.E.2d 227, 230 (Ind. 2012) ("Circumstantial evidence alone is sufficient to sustain a burglary conviction."). And the verdict will not be overturned if a reasonable inference can be drawn from the circumstantial evidence. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003).

In the case before us, Laura—who was with Poitan on the night of the burglary and theft—testified as to her knowledge of the events on December 12, 2012. This included Poitan setting his alarm for 3:00 a.m., Poitan coming back to Cody's house with a large amount of money approximately one to two hours later, bragging that he had taken the money from his friend Dylan, and taking and posting a picture of the money on Facebook. Both Robert and Sammie gave testimony about multiple conversations each of them had with Poitan while housed at the Shelby County Jail, which essentially described Poitan entering Grandmother's house and taking Dylan's money. While Laura physically took the picture of the money with her phone, Robert and Sammie both testified that Poitan showed them the picture. Poitan contends the evidence introduced was "not probative to a point where a fact finder could find [him] guilty beyond a reasonable doubt," arguing that "a reasonable fact finder could not solely rely on [Laura's] word" because "[Laura's] credibility was brought into question" due to her conflicting testimony, and no other evidence was submitted to corroborate her testimony.[4] Appellant's Br. p. 10-11. Poitan

---

[4] When questioned by the police, Laura stated that Poitan's money consisted of fifty and one-hundred-dollar bills. Tr. p. 71-73. At trial Laura stated she saw about $600 in Poitan's possession and

8

also questions the credibility of the testimony of Robert and Sammie because "both [Robert] and [Sammie's] testimony conflicts with the other evidence on the case." *Id*. at 11.

We conclude that a reasonable jury could find beyond a reasonable doubt from these facts and circumstances that Poitan broke and entered Grandmother's house, with intent to knowingly or intentionally deprive Dylan of his property. Further, Poitan's arguments concerning the credibility of the witnesses are merely requests to reweigh the evidence, which we may not do. The evidence is sufficient to support his convictions.

## II. Inappropriate Sentence

Poitan next contends that his sentence is inappropriate in light of the nature of the offenses and his character. "[T]he Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decisions." *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). "We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision we find the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id*. (quotations omitted). "We have long said that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996)). In determining

made no reference to the increments of the bills. *Id*. at 52-53. The picture of the money, however, depicted the cash in twenty-dollar bills. State's Ex. 1. Laura also stated that Poitan told her Dylan was asleep on the floor, whereas Dylan stated he was asleep in the bed in his room. Tr. p. 23, 56. Also, because no fingerprints were taken from the wallet and the State did not call Cody Johnson—the other person with Poitan the night of the crimes—to testify at trial, Laura's testimony was not corroborated by any evidence other than the testimony of Robert and Sammie.

whether a sentence is appropriate the court looks at the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id*. at 1224. Appellate courts may consider all aspects of the penal consequences imposed by the trial judge in sentencing the defendant, including the suspended portion of the sentence. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). Poitan bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Concerning the nature of the offenses, Poitan broke into the house of an eighty-five-year-old woman suffering from Alzheimer's disease and dementia and stole $600 to $630 from the wallet of Dylan, who works two jobs. Poitan then bragged about the crimes to his friends, posted a picture of the money on Facebook, and bought drugs with the money. Poitan argues that the trial court gave too much significance to Grandmother's age and condition and that Dylan was the "[t]he true victim in this case" because there was no evidence of forced entry, Poitan had been to Grandmother's house before, and nothing in the residence was taken or disturbed besides Dylan's money. Appellant's Br. p. 14. This argument fails, however, because Poitan was convicted of breaking and entering Grandmother's house with intent to commit a felony therein. Therefore, while Dylan's money was stolen and he is the victim of theft, it was Grandmother's house that was burglarized, and Grandmother is the victim of the burglary.

In evaluating Poitan's character, this Court has stated that "[t]he significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State*, 982 N.E.2d

1055, 1060 (Ind. Ct. App. 2013) (citing *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). Even a minor criminal history is a poor reflection of a defendant's character. *Id*. While the trial court acknowledged that Poitan's criminal history "is not the most serious . . . that the Court has observed," Poitan does have a criminal history. Tr. p. 230. This includes possession of marijuana that, at the time of sentencing, Poitan had an active warrant for in New York for failure to appear at a court hearing, as well as a pending case for burglary and theft in Shelby County. PSI p. 4-5. Poitan also has a felony conviction for intimidation. *Id*. at 4-5. In fact, Poitan was on probation for the intimidation conviction—an aggravator given significant weight by the trial court—when he committed the burglary and theft at issue here. *Id*. at 5. During his time in the Shelby County Jail, Poitan committed multiple violations including being written up three times for being in an unauthorized area, using profanity, disturbing the peace, and fighting. *Id*. at 5. Because of these violations, Poitan was placed on lockdown for five, ten, and fifteen days, including thirty days in segregation. Poitan also stated that it was okay to lie and gave the example of "lying when you don't want to get in trouble" as an acceptable reason not to tell the truth. *Id*. at 8.

For crimes committed before July 1, 2014, Indiana Code section 35-50-2-5 states the advisory sentence for a Class B felony is ten years, the maximum sentence is twenty years, and the minimum sentence is six years. Under Indiana Code section 35-50-2-7 the advisory sentence for a Class D felony is one and one-half years, the maximum sentence is six years, and the minimum sentence is three years. Despite the trial court finding that the aggravators supported an enhanced sentence, Dylan was sentenced well below the

11

maximum to twelve years, with two years suspended to probation, for Count I, and two years for Count II. The sentences are to be served concurrently, for an aggregate term of ten years. Because the sentences are concurrent with two years suspended on Count I, Poitan will serve only the ten-year advisory sentence for a Class B felony.

Considering these facts and in light of the nature of the offenses and his character, Poitan has failed to persuade us that his twelve-year sentence, with two years suspended to probation, is inappropriate.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.