# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2017, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles W. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael M. Harvey, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 5, 2017 <br><br> Court of Appeals Case No. 71A04-1608-CR-1992 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jenny Pitts Manier, Judge <br><br> Trial Court Cause No. 71D05-1505-CM-1639 |

**Mathias, Judge.**

[1] Following a jury trial in St. Joseph Superior Court, Michael M. Harvey ("Harvey") was convicted of Class A misdemeanor theft. Harvey appeals and

presents two issues, which we reorder and restate as: (1) whether the trial court improperly limited Harvey's cross-examination of a witness for the State, and (2) whether the State presented sufficient evidence to support Harvey's conviction for theft.

We affirm.

## Facts and Procedural History

On February 25, 2015, Harvey was shopping at a Walmart store in South Bend, Indiana. He had in his shopping cart several items for his daughter's bed. Among these items were six pillows and a bedding set that included a large comforter. Also in the cart was an in-ear baby thermometer. Harvey went to a self-service checkout machine, which drew the attention of the store's security personnel.

Asset Protection employees Tara Lintz ("Lintz") and Jamie Flores ("Flores") were monitoring the store via a system of remote cameras. Video from these cameras was recorded, including Harvey's transaction at the self-checkout machine. Lintz considered bedding sets such as the one Harvey had in his shopping cart to be high-theft items due to their relatively high price and that such sets were frequently used to obtain refunds at that store. Accordingly, she and Flores closely watched Harvey's transaction at the register.

The self-checkout machines use a three-stage process to allow a customer to pay for an item. Items that the customer wishes to purchase are first placed to the right-most area. The customer then moves the item to the scanning area in the

middle of the machine. There, the machine reads the Universal Product Code ("UPC") barcode on the item to determine what the item is and how much it costs. The customer finally moves the item to the bagging area, where electronic scales weigh the item placed in the bag, comparing it to the known weight of the item just scanned. If an item is scanned but not placed on the scales in the bagging area, the machine will audibly and visibly alert the customer to place the item in the bagging area. The customer also has an option to press an on-screen button indicating that they do not plan to bag the item. Once the customer is finished scanning the items, he may press another on-screen button to pay for the items, which are listed on screen, as is the total price. The customer then selects a payment option, pays via the selected method, and receives a receipt. If the customer has any problem with one of the eight self-checkout machines, a store employee is stationed nearby to assist the customer.

[6] Harvey took one of the pillows from his cart, scanned it, and then placed it in the scaled bagging area. He then did the same for four more pillows. The last pillow, however, he did not scan, and he handed it to his fiancée.[1] Harvey then took the bedding set and waved it in front of the scanner, but the scanner did not read the UPC on the bedding set. Harvey claims that he heard the scanner beep, but Lintz and Flores testified that the machine would beep loudly only if it had successfully scanned the item. Instead of placing the bedding set in the

---

[1] Harvey testified that he asked his fiancée to return the pillow because it was much more expensive than the other pillows.

bagging area, which already contained five pillows, Harvey placed the bedding set on the floor in front of the bagging area. Had Harvey successfully scanned the bedding set, the self-checkout machine would have repeatedly informed him to place the item in the bagging area. Harvey next waved the in-ear thermometer over the scanner but did so with the back, where the UPC was located, facing up, so that the thermometer too did not scan. He then placed the thermometer on top of the bedding set on the floor. During this time, Harvey's fiancée placed a candy bar and a bag of M&Ms in the area to the left of the scanner. These items were never scanned.

[7] Harvey then began to place the pillows into plastic shopping bags and put them in his shopping cart. He did the same for the thermometer, but did not attempt to bag the bedding set as it was too bulky to fit into a plastic shopping bag. The total price for the items Harvey scanned was $19.15. This total was directly displayed on the self-checkout screen. The bedding set, which did not scan, alone cost $49.96, and the thermometer, which also did not scan, cost $19.87. Harvey then used a loadable Walmart debit card to pay $19.87 for the items that were scanned. Harvey took a receipt from the self-checkout machine, and began to walk toward the exit of the store. As he did, the security camera continued to observe and record his actions. At one point, Harvey looked directly at the receipt as he approached the exit.

[8]     Harvey passed the electronic article surveillance system placed on the inside of the double doorway leading to the lobby.[2] Once he did so, Flores confronted Harvey and asked to see his receipt. Harvey showed the receipt to Flores, who then confirmed the discrepancy between the items on the receipt and the items in Harvey's shopping cart. Harvey claimed that his failure to pay for these items was inadvertent and offered to pay for them, but to no avail.

[9]     On May 28, 2015, the State charged Harvey with Class A misdemeanor theft. A jury trial was held on May 12, 2016. During Harvey's cross-examination of Lintz,[3] Harvey's counsel engaged in the following exchange with Lintz:

> Q.    Okay. These eight [self-checkout] machines, you indicated that they're all in a similar area, they're all close by?
>
> A.    Yes.
>
> Q.    And they all make loud beeps when someone scans; is that true?
>
> A.    Yes.
>
> Q.    Is it -- is it always inherently clear whose machine is beeping?
>
> A.    I don't -- what do you mean?
>
> Q.    Well, I guess is it possible that when you have eight machines, they're all operating, they're all beeping, could a customer think they've successfully scanned an item

---

[2] This detector system is used to detect high-price items, such a consumer electronics, that have a special tag that must be deactivated upon purchase. If such a specially tagged item is not paid for, or if the special tag is not deactivated, an alarm will sound if the item is taken past the detectors.

[3] At the conclusion of the State's case-in-chief, Harvey moved for a directed verdict. The trial court granted the directed verdict to the extent the State alleged that Harvey had stolen the candy and a bottle of soda pop that was also found among the items in Harvey's shopping cart. Tr. p. 93.

because they hear a beep, only to find out that was the beep at the exchange nearby?

Tr. pp. 42-43.

[10] At this point, the prosecuting attorney objected, arguing that the question called for improper speculation. The trial court sustained the objection, and the cross-examination continued as follows:

> Q. Miss Lintz, let me just ask you just a little bit of a different way for clarification. The eight [self-checkout] machines are in close proximity; true?
>
> A. Yes.
>
> Q. Okay. When items are successfully scanned they beep?
>
> A. Yes.
>
> Q. Okay. What noise do they make if a person unsuccessfully scanned an item or has been placed on the scale? You describe another noise.
>
> A. When an item did not -- does not actually scan but is then placed in on the scale -- on the scale?
>
> Q. Or under the scale because the scale is full.
>
> A. You're asking -- you're asking me two different questions. I'm sorry.
>
> Q. Okay. You're right. I am. Okay. First question is, what noise does the machine make when someone places an item on the scale that was unsuccessfully scanned?
>
> A. The screen will prompt that there is an unknown item in the bagging area.
>
> Q. Okay, okay. And the customer gets that message and the cashier [overseeing the self-checkout machines] gets that message?

A. Yes.

Q. Okay. What happens when a customer observed their scale is full, they attempt to scan an item and they place it underneath the scale? What noise, if any, is made then?

A. If they -- if a customer scans an item --

Q. I'm sorry. A customer attempts to scan an item.

A. That's not a clear question.

Q. If -- if a customer takes the item, makes a motion in an effort to scan but the item does not successfully scan.

A. There would be nothing, if their item did not actually scan.

Q. Okay. So then placing the item underneath a scale loaded with other things is not going to trigger any message.

A. If nothing gets scanned and then it gets placed not on the scale, then nothing should happen.

Tr. pp. 44-45.

[11] At the conclusion of the trial, the jury found Harvey guilty as charged. On June 1, 2016, the trial court imposed no incarceration but ordered Harvey to pay a $300 fine within ninety days. Harvey's previously posted bond of $250 was applied toward the fine. Harvey now appeals.

## I. Limitation of Cross-Examination

[12] A trial court's rulings on the admission of evidence are generally accorded a great deal of deference on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015), *reh'g denied*. As the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility only for an abuse of discretion. *Id*. Accordingly, we will reverse only if the trial court's evidentiary

ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[13] Harvey argues that the trial court abused its discretion when it sustained the State's objection to his questioning of Lintz regarding the beeps the self-checkout machines made and whether a customer could be confused by the beeps. He contends that whether the beeps from different machines were clearly distinguishable "was intensely relevant to mens rea." Appellant's Br. at 10. He further claims that the trial court's limitation of his questioning of Lintz denied the defense "its only opportunity to present an explanation for Harvey's perception of hearing a beep." *Id.* We disagree.

[14] As set forth above, Harvey asked Lintz, "could a customer think they've successfully scanned an item because they hear a beep, only to find out that was the beep at the exchange nearby?" Tr. p. 43. The State objected on grounds that the question called for speculation and repeats this argument on appeal. We agree. An answer to a question of a witness that calls for speculation and conjecture is not admissible. *Kubsch v. State*, 784 N.E.2d 905, 926 (Ind. 2003). "Because it is axiomatic that a ruling or a verdict should not be based upon 'evidence which is conjectural,' '[t]o require a witness to answer hypothetical questions based upon facts not established would invite speculation.'" *Id.* (quoting *Lindsey v. State*, 485 N.E.2d 102, 106-07 (Ind. 1985) (alteration in original).

[15] Harvey's question to Lintz called for her to speculate as to what a customer might have been able to hear and whether that might have been confusing. The trial court's decision to sustain this question as calling for speculation was not an abuse of the trial court's considerable discretion.

[16] We further reject Harvey's claims that the trial court's evidentiary ruling deprived him of his constitutional right to present a defense. The trial court did not deprive Harvey of his ability to question witnesses about the number of self-checkout machines in operation or whether these machines also made beeping sounds. And he was free to, and did, argue that this "beeping cacophony," Appellant's Br. at 10, confused him and made him believe that he had scanned the items he did not pay for. As noted by the State, Lintz testified that she did not know precisely how many self-checkout machines were operating at the time Harvey was checking out. Harvey was not deprived of an opportunity to call other witnesses who may have been able to testify as to the number of registers in use and the amount of "beeps" that could be heard at the time. In fact, Harvey testified on his own behalf that other customers were using the other self-checkout registers at the time and that he heard two beeps causing him to think he scanned the bedding set and thermometer.

[17] All the trial court did here was sustain an objection based on the grounds that the question called for a speculative answer. Evidence to support the defendant's theory must comply with applicable evidentiary rules. *Kubsch*, 784 N.E.2d at 926. The trial court did not prevent Harvey from presenting his defense, i.e., that a beep from another self-checkout register caused him to

believe, incorrectly, that he had successfully scanned the bedding set and thermometer. *See id.* (holding that trial court did not improperly deny defendants' right to present his defense when the court merely sustained the State's objection to defendant's question to a witness improperly calling for speculation and conjecture).

## II. Sufficiency of the Evidence

Harvey also claims that the evidence was insufficient to support his conviction for theft. When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the jury's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* But a reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla. *Id.*

To convict Harvey of Class A misdemeanor theft, the State was required to prove beyond a reasonable doubt that Harvey knowingly exerted unauthorized control over the property of another person with the intent to deprive that person of any part of the property's value or use. Ind. Code § 35-43-4-2(a). Harvey does not deny that he did not pay for the bedding set or thermometer. He claims only that the State did not prove that he knowingly did so. That is,

he claims, as he did at trial, that he mistakenly thought he had scanned the items and mistakenly thought he had paid for them. Were we sitting as the trier of fact, we might give some credit to Harvey's claims. But this is not our role as an appellate court. On appeal, we are obliged to consider only the evidence that supports the jury's verdict.[4]

[20] Here, the jury could reasonably conclude that Harvey only feigned his attempt to scan the bedding set and thermometer. Indeed, the video clearly shows him attempting to scan the thermometer with the back side, containing the UPC code the scanner reads, upside down. Moreover, Harvey clearly looked at the checkout screen which listed the amount he owed. The total was under $20, whereas he admitted that he knew the thermometer and bedding individually cost more than that. It was for the jury, not us, to determine whether Harvey was being truthful and whether he knowingly took the items without paying for them or whether he was merely mistaken by the confusing nature of the self-checkout machines. We therefore conclude that the State presented sufficient evidence to support Harvey's conviction for Class A misdemeanor theft.

---

[4] We also decline Harvey's request that we consider an article that he did not submit to the trial court. *See Self-Checkout Technology, Human-use Experience Analysis,* available at: web.mit.edu/2.744/www/Project/Assignments/humanUse/aychen/problems-bagging.html. Nor do we consider this the sort of source worthy of judicial notice. *Cf.* Ind. Evidence Rule 201(a)(1) (providing that a court may take judicial notice of "a fact that: (A) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or (B) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

# Conclusion

The trial court did not abuse its discretion in sustaining the State's objection to Harvey's question to a witness that called for speculation, nor did this evidentiary ruling deny Harvey the right to present his defense. And the State presented evidence sufficient to support Harvey's conviction for Class A misdemeanor theft.

Affirmed.

Kirsch, J., and Altice, J., concur.