



FILED

Mar 25 2024, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

David C. Wanke, Sr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 25, 2024

Court of Appeals Case No.
23A-CR-2423

Appeal from the Knox Superior Court

The Honorable Gara U. Lee, Judge

Trial Court Cause No.
42D01-2207-F1-3

---

**Opinion by Judge Mathias**
Judges Tavitas and Weissmann concur.

**Mathias, Judge.**

[1] In *VanPatten v. State*, 986 N.E.2d 255, 265-67 (Ind. 2013), our Supreme Court held that there must be affirmative evidence in the record that a young child understands "the role of [a] medical professional and the purpose of [her] visit" with the professional "in order for us to infer that the child was motivated to speak truthfully" to that professional for the purposes of medical diagnosis or treatment. Here, a five-year-old child, N.W., made statements to a medical professional that were incriminating toward her grandfather, David C. Wanke, Sr., which statements the trial court admitted into evidence over Wanke's hearsay objection. However, as in *VanPatten*, here there is no affirmative evidence in the record to show that N.W. understood the role of the nurse to whom she spoke or the need to speak truthfully to that nurse for the purpose of medical diagnosis or treatment. Accordingly, following our Supreme Court's clear precedent, we reverse Wanke's conviction for Level 1 felony child molesting and his adjudication as a habitual offender, and we remand for further proceedings consistent with this opinion.

## Facts and Procedural History

[2] Wanke is the paternal grandfather of N.W., and Ashton Wheeler is Wanke's daughter-in-law and N.W.'s mother. In July 2022, N.W. lived with her three siblings at her parents' home in Bruceville. For about two weeks prior to July 8, Wanke bought "a bunch of . . . clothing and some toys" for his grandchildren, but "99 percent of that stuff was for N.W." Tr. Vol. 3, p. 31.

[3]     On July 8, Wanke visited Wheeler's home. N.W. was wearing a dress. The children went outside to play on a trampoline. While N.W.'s siblings played, Wanke held N.W. According to Wheeler, Wanke "insisted on continuously trying to hold" N.W. *Id.* at 38. By the trampoline, Wheeler could see that Wanke was holding N.W. in a manner that was "not normal." *Id.* at 61. N.W. was facing toward Wanke, and he had a hand "under her leg" and "right beside" N.W.'s buttocks. *Id.* at 60-61.

[4]     The next morning, N.W. went to the bathroom and started "yelling, 'Mom. Mom. Mom.'" *Id.* at 25. Wheeler went to the bathroom and saw that N.W.'s underwear was "bloody." *Id.* N.W. told Wheeler that "something happened the day before" with Wanke "near the trampoline." *Id.* at 27, 122. Wheeler contacted local law enforcement and later took N.W. to a nearby hospital.

[5]     At the hospital, Courtney Benson, a nurse practitioner with specialized training in sexual assault, examined N.W. As a routine part of her examinations in possible cases of sexual assault involving children, Nurse Benson will ask the patient "if [the patient] can explain what happened . . . to make sure [the patient] doesn't have any acute injuries that" Nurse Benson would "need to take care of." *Id.* at 74-75. This dialogue with the patient also enables Nurse Benson to "look for [an] injury that is consistent with what they are telling me." *Id.* at 77. Nurse Benson later testified that such questioning is for the purpose of diagnosis and treatment. *Id.* at 75.

[6]     When Nurse Benson asked this question to N.W., N.W. responded:

"We were beside the trampoline, and he was holding me." She state[d], "He poked me through my clothes." She state[d], "Grandpa used his nails on me." And she state[d] she woke up with blood in her underwear and yelled for her mother.

*Id.* at 80. Nurse Benson then did a physical examination of N.W., including an examination of N.W.'s genitals. Nurse Benson located "an abrasion . . . to the inner aspect of [N.W.'s] left labia majora." *Id.* at 81. Nurse Benson concluded that such an injury is not "normal" and could not have been caused by "anything besides external force." *Id.* at 84.

[7] The State charged Wanke with Level 1 felony child molesting and with being a habitual offender. At his ensuing jury trial, the State called N.W. as a witness. She was six-years old at the time of the trial, and she testified that she did not remember anything about the alleged incident. The State did not ask N.W. questions about her July 9, 2022, interaction with Nurse Benson.

[8] Instead, the State called Nurse Benson as a witness and asked her about her diagnosis and treatment of N.W., including her questions to N.W. and N.W.'s responses. Wanke objected to Nurse Benson testifying to N.W.'s out-of-court statements. At no point during Nurse Benson's testimony did she state that she had had any kind of dialogue with N.W. about her role as a nurse, the purpose of N.W. meeting with her, or the need to speak truthfully. Nonetheless, the trial court overruled Wanke's objection and permitted Nurse Benson to testify to N.W.'s out-of-court statements to her.

[9] The jury found Wanke guilty of Level 1 felony child molesting and further found him to be a habitual offender. The court entered its judgment of conviction and sentenced Wanke accordingly. This appeal ensued.

## 1. The trial court erred when it permitted Nurse Benson to testify to N.W.'s out-of-court statements.

[10] On appeal, Wanke first argues that the trial court erred when it permitted Nurse Benson to testify to N.W.'s statements to her at the hospital. A trial court has broad discretion regarding the admission of evidence, and its decisions are reviewed only for abuse of discretion. *Hall v. State*, 177 N.E.3d 1183, 1193 (Ind. 2021). We will reverse only if the trial court's ruling was clearly against the logic and effect of the facts and circumstances before it and the errors affect a party's substantial rights. *Id.*

[11] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. *See* Evid. R. 802. However, Evidence Rule 803(4) permits statements made for the purpose of medical diagnosis or treatment to be admitted into evidence, even when the declarant is available. As our Supreme Court has explained:

> [Such] statements must be made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Rule 803(4)'s exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial—more simply put, Rule

803(4) reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well. *See White v. Illinois*, 502 U.S. 346, 356, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992) ("a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility").

*VanPatten*, 986 N.E.2d at 260 (cleaned up).

[12] To have an out-of-court statement to a medical professional admitted into evidence under Rule 803(4), the State must first show that "the declarant [was] motivated to provide truthful information in order to promote diagnosis [or] treatment." *Id.* For most declarants, such as adults, "this is generally a simple matter," as seeking medical treatment in the first instance is usually indicative of a subjective belief that statements made to the medical professional will be for the purpose of diagnosis or treatment. *Id.* at 260-61.

[13] But more is required when the declarant is "a young child brought to the medical provider by a parent." *Id.* at 261. As our Supreme Court has made clear:

> young children may not understand the nature of the examination, the function of the examiner, and may not necessarily make the necessary link between truthful responses and accurate medical treatment. In that circumstance, *there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information.* This evidence does not necessarily require testimony from the child-declarant; it may be received in the form of foundational testimony from the medical professional *detailing the interaction between him or her and*

*the declarant, how he or she explained his role to the declarant, and an affirmation that the declarant understood that role. But whatever its source, this foundation must be present and sufficient.*

*Id.* (cleaned up; emphases added).

[14] In *VanPatten*, our Supreme Court held that the State had not established that two six-year-old victims understood the importance of telling a treating nurse the truth in order to get accurate medical treatment. *Id.* at 265. The nurse had observed prior police interviews, and the medical examination directly followed extensive interviews of the victims by the Department of Child Services. Further, the victims did not testify they had understood the nurse's role. The nurse was also unable to testify as to what she had said to the victims, how they responded, and if they understood their situation.

[15] We conclude that *VanPatten* is controlling authority on this record. The State established no record at all as to whether N.W. understood Nurse Benson's role or the role of nurses or doctors in general. Nor is there testimony from any witness concerning past experiences N.W. may have had at medical facilities or with medical providers from which one may be able to infer that a five-year-old child understood why she was being examined. And Nurse Benson, while testifying to her usual routine in cases such as this, provided no testimony that N.W. in particular, and on this occasion, understood Nurse Benson's role or the importance of being truthful to Nurse Benson for the purpose of diagnosis or treatment.

As in *VanPatten*, "[s]imply put, there is no evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information" under Rule 803(4). *Id.* at 267 (quotation marks omitted). Therefore, the trial court abused its discretion when it admitted N.W.'s statements to Nurse Benson under that exception to the prohibition against hearsay.

## 2. Nurse Benson's testimony had a significant probable impact on the outcome of the trial, and, thus, the error in the admission of that testimony is not harmless.

We next turn to the probable impact of Nurse Benson's erroneously admitted statements to discern if that error is reversible error. As our Supreme Court has held:

> When an appellate court must determine whether a non-constitutional error is harmless, [Indiana Appellate] Rule 66(A)'s "probable impact test" controls. Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below. Importantly, this is not a review for the sufficiency of the remaining evidence; it is a review of what was presented to the trier of fact compared to what should have been presented. And when conducting that review, we consider the likely impact of the improperly admitted or excluded evidence on a reasonable, average jury in light of all the evidence in the case. Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined.

*Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023) (citations omitted).

The erroneous admission of Nurse Benson's testimony readily undermines our confidence in the outcome of Wanke's trial. Nurse Benson's testimony as to what N.W. had said to her was unique, specific, and substantial. It was the only source in the record in which N.W. had affirmatively stated that Wanke had "poked me through my clothes." Tr. Vol. 3, p. 80. It was also the only source in which N.W. said that Wanke had "used his nails on me." *Id.* Both of those statements filled an evidentiary gap in the State's case that no other witness was able to fill, namely, bridging the gap from Wheeler's observation of Wanke holding N.W. by the trampoline in an unusual manner and N.W.'s bloody underpants the next morning. Further, those statements surely had a substantial impact on the jury's consideration of the cause of N.W.'s inner-labia injury and her bloody underpants. Accordingly, the trial court's erroneous admission of N.W.'s out-of-court statements to Nurse Benson is reversible error.

## 3. Retrial is not prohibited.

Finally, where, as here, the trial court erroneously admits improper evidence into the record and the error is not harmless, retrial of the defendant is not barred by double jeopardy if the admitted evidence in the first trial was sufficient to support the conviction. *Gaby v. State*, 949 N.E.2d 870, 882 (Ind. Ct. App. 2011).

Having reviewed the record, we conclude that the State's properly admitted evidence by itself could have been sufficient to support Wanke's conviction for Level 1 felony child molesting. Wheeler testified that Wanke was holding N.W. awkwardly near the trampoline, and the next morning there was blood in

N.W.'s underwear. And, in his own defense, Wanke told the jury that N.W. had reported to law enforcement that something had happened with him while he was holding her down by the trampoline. That evidence, while not overwhelming, would have been a sufficient basis for a conviction. *Cf. Meehan v. State*, 7 N.E.3d 255, 258-59 (Ind. 2014) (holding that a glove with the defendant's DNA somewhere on it that was found at a crime scene was sufficient evidence by itself to convict the defendant of burglary). The State is therefore not barred from a retrial of Wanke for Level 1 felony child molesting.

## Conclusion

[21] For all of the above-stated stated reasons, we reverse Wanke's conviction for Level 1 felony child molesting and his adjudication as a habitual offender, and we remand for further proceedings consistent with this opinion.

[22] Reversed and remanded.

Tavitas, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana