Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 09 2014, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL J. KYLE**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LANCE BROWNLEE,          )
                         )
   Appellant-Defendant,  )
                         )
     vs.           )    No. 07A01-1312-CR-528
                         )
STATE OF INDIANA,        )
                         )
   Appellee-Plaintiff.   )

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith Stewart, Judge
Cause No. 07C01-1307-FA-000227

**September 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Lance Brownlee appeals his conviction for Class A felony child molesting for molesting his girlfriend's grandson and his status as a credit-restricted felon. Brownlee argues that the victim was incredibly dubious because of inconsistencies between three different statements as to whether Brownlee sucked or touched his penis. Brownlee also argues that the trial court erred in determining that he was a credit-restricted felon because the statutes violate his right to trial by jury guaranteed by the Sixth Amendment.

Because the prosecutor told the jury during closing argument that it had to decide whether Brownlee sucked or touched the child's penis based on the evidence presented, it gave the jury a plausible reason why the child gave inconsistent statements, the incredible-dubiosity rule applies only to trial testimony, and Brownlee did not identify any inconsistencies in the child's trial testimony, we decline to invoke the incredible-dubiosity rule and therefore affirm Brownlee's conviction. In addition, because credit-restricted-felon statutes affect the credit time that a defendant receives against his sentence and do not lengthen the fixed term of a defendant's sentence, his constitutional challenge fails. We therefore affirm the trial court.

**Facts and Procedural History**

J.T.R. was born on May 31, 2005. In early 2013, when J.T.R. was seven and one-half years old, he lived in Franklin, Indiana, with his mother, Sara Agee, stepfather, Donald Agee, and siblings. J.T.R. occasionally visited his grandmother, Chari Raney, who lived with her boyfriend, Brownlee, in Brown County on a four-acre property.

2

In January or February 2013 J.T.R. spent the night at his grandmother's house. When J.T.R. and Brownlee went to get firewood in the woods behind the house, Brownlee pushed J.T.R. down on his back, pulled down his pants, and put his mouth on J.T.R.'s penis. J.T.R. was able to get away and ran back to the house.

Around April 2013 J.T.R's mother, Sara, suspected that J.T.R. had been molested. Tr. p. 312, 316. Sara and Donald talked to J.T.R. alone in their bedroom, where J.T.R. told them that Brownlee had molested him. *Id.* at 312-14.

J.T.R. went to Susie's Place, a child-advocacy center that investigates allegations of crimes against children, for an interview on June 19, 2013. During the interview, J.T.R. said that Brownlee, who he called "Uncle Lance," made him things, such as spray-painted coconuts and buckeye necklaces. J.T.R. said that the last time he was at his grandmother's house in "Whiteland," it was sunny, cold, and raining. *Id.* at 276. So he and Uncle Lance went to get firewood in the woods behind the house after breakfast. When they went to get firewood, Uncle Lance started to suck his "acorn" with his mouth. *Id.* at 258. J.T.R. described his "acorn" as his private part that he uses to go to the restroom. *Id.* J.T.R. said he was wearing jeans and a short-sleeve shirt at the time and that Uncle Lance, who he described as "dirty and oily," pushed him down on his back, pulled down his pants, and was sitting down when he put his mouth on his acorn. *Id.* at 258-60. J.T.R. said that "it didn't feel good" and he "was getting ready to puke." *Id.* at 260. J.T.R., however, was able to get up; he then pulled up his pants and ran back to the house. Uncle Lance told J.T.R. not to say anything because he might go to jail. *Id.* at 257. J.T.R. was scared that Uncle Lance would touch him again if he talked about it. *Id.* at 250. J.T.R. said he told

3

his mother what happened "[w]hen I got back to home" and that his mother told Donald. *Id.* at 281.

On July 16, 2013, the State charged Brownlee with four counts relating to this incident: Count I: Class A felony child molesting (deviate sexual conduct); Count II: Class D felony sexual battery; Count III: Class C felony criminal confinement; and Count IV: Class B felony criminal deviate conduct. Appellant's App. p. 1 (CCS).[1] Count IV was later amended to Class C felony child molesting (fondling or touching). *Id.*

Defense counsel took J.T.R.'s deposition about a month before trial on August 30, 2013. During the deposition, J.T.R. referred to his penis as his "noodle." *Id.* at 293. He said Brownlee touched his noodle—one time—with his hand. *Id.* at 294-95. J.T.R. said that he was wearing shorts, underwear, and a shirt at the time. *Id.* at 295-96. J.T.R. explained that because his shorts were too big for him, they were already part-way down, so Brownlee pulled them the rest of the way down. Brownlee then pushed J.T.R. down and touched his noodle with his right hand, which had silver rings on it, for "[o]ne second." *Id.* at 300. J.T.R. then pulled up his shorts and ran back to the house. J.T.R. said he did not tell anyone at the time because he was scared, but the first person he told was Donald.

The prosecutor then asked J.T.R. a few questions. J.T.R. said "noodle" and "acorn," the term he used during his interview at Susie's Place, meant the same thing. *Id.* at 305. J.T.R. told the prosecutor that although he told the interviewer at Susie's Place that Brownlee sucked his noodle, he meant to say that Brownlee "touch[ed]" his noodle. *Id.* at 305. J.T.R. also said Brownlee was sitting down when he touched his noodle. *Id.* at 306.

---

[1] The charging information is not included in the record on appeal. *But see* Tr. p. 206-07.

J.T.R. said he did not know why Brownlee touched his noodle for only one second as opposed to longer, but he was able to get up and run back to the house. *Id.*

Brownlee's jury trial started on October 2, 2013, approximately nine months after the incident. J.T.R. was the first witness to testify for the State. He was eight years old at the time. J.T.R. said the last time he visited his grandmother, he and Brownlee went to get firewood. When they were getting firewood, Brownlee touched J.T.R.'s "bottom" "[o]n the front side." *Id.* at 223. When asked what he called the front side of his body, J.T.R. responded "a coconut or a noodle." *Id.* at 224. J.T.R. explained that he used this part of his body to go to the restroom. *Id.* J.T.R. testified that he was bending down when Brownlee pushed him down on his back. *Id.* at 224, 226. J.T.R. explained that his pants were down at this time because they were too big for him; furthermore, he was not wearing any underwear that day. *Id.* at 224. J.T.R. testified that Brownlee was on his knees when he touched him with "[h]is hands" for "one second." *Id.* at 225, 229. J.T.R. did not want Brownlee to touch him. When asked how that made him feel, J.T.R. responded, "disappointed." *Id.* at 225. J.T.R. explained that he was able to run away because, "[Brownlee's] hands was [sic] like wet, because he washed his hands before and he slipped and I got out." *Id.* J.T.R. then pulled up his pants and ran back to the house. J.T.R. said Brownlee told him not to tell anyone, but he could not remember why. *Id.* at 226.

After J.T.R. testified, the trial court informed the jury that the prosecutor and defense counsel had "agreed to play for you the interview of [J.T.R.] at Susie's Place taken, I believe . . . in June, and also to . . . present to you the deposition of [J.T.R.] that was taken

on August 30th of this year." *Id.* at 232. Both were admitted as substantive evidence.[2] *Id.* at 380.

Brownlee testified in his own defense; he denied that the events took place and denied wearing rings on any of his fingers.

During closing argument, defense counsel pointed out the differences between J.T.R.'s three statements, highlighting that J.T.R. said suck only during the interview at Susie's Place but touch the other two times, which were under oath. Defense counsel pointed out other differences as well, such as whether the touching was one minute or one second, whether Brownlee was sitting or kneeling, and who J.T.R. told first—Sara or Donald. The prosecutor acknowledged that there were differences in J.T.R.'s statements but argued that "the similarities . . . are more than the differences." *Id.* at 390. Specifically, the prosecutor argued:

> And if you think about what [J.T.R.] said and obviously the major difference is the nature of the touching. That in the deposition with [defense counsel] and in my office, and . . . in his testimony here, he talked about the touch being with . . . a hand. But when he's at Susie's Place, . . . he told . . . [the] interviewer, that [Brownlee's] mouth was on his acorn . . . .
>
> \* \* \* \* \*
>
> Why is it that he talks about it being a touch in a lawyer's office and in court and why it is that he talks about it being a mouth touching at Susie's Place?

---

[2] *But see Tyler v. State*, 903 N.E.2d 463, 467 (Ind. 2009) ("[W]e conclude that this Court should exercise its supervisory powers to elaborate on the permissible use of statements under the [Protected Person Statute]. We hold that if the statements are consistent and both are otherwise admissible, testimony of a protected person may be presented in open court or by prerecorded statement through the PPS, but not both except as authorized under the Rules of Evidence. If the person is able to testify live without serious emotional distress such that the protected person cannot reasonably communicate, that is clearly preferable." (footnote omitted)). Brownlee does not argue that the trial court erred in admitting the deposition or interview at Susie's Place in violation of the PPS.

6

> Because it's weird and nasty enough to have a grown man touch his penis. But to be able to say mouth is much more difficult.

*Id.* at 390-91. The prosecutor also told the jury to remember what Susie's Place is, a "Child Advocacy Center" that has "[t]rained interviewers who as their job work with kids to make them feel comfortable and be able to talk about weird and nasty stuff. . . . They provide an environment conducive for kids to be able to talk about things that these kids don't want to talk about." *Id.* at 390. Accordingly, the prosecutor told the jury that the issue was whether Brownlee touched J.T.R.'s penis with his mouth or hand. *Id.* a 392. The prosecutor said this question was "up to [the jury] to make a determination of what the evidence shows," because the State charged the case in two different ways: child molesting as a Class A felony (deviate sexual conduct) or Class C felony (touching or fondling). *Id.* The jury ultimately found Brownlee guilty of all four counts.

A sentencing hearing was held in November 2013. The trial court entered judgment of conviction on Counts I and III only because of double-jeopardy concerns, *id.* at 435-36, and sentenced Brownlee to concurrent terms of forty years and eight years. The trial court further found that Brownlee was a credit-restricted felon and was thus entitled to one day of credit for every six days served. *Id.*

Brownlee now appeals.

**Discussion and Decision**

Brownlee raises two issues on appeal. First, he argues that the evidence is insufficient to support his conviction for Class A felony child molesting because J.T.R's testimony was incredibly dubious. Second, he argues that the trial court erred in determining that he was a credit-restricted felon.

7

## I. Incredible-Dubiosity Rule

Brownlee contends that the evidence is insufficient to support his conviction for Class A felony child molesting.[3] When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the judgment. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.*

Appellate courts may, however, apply the "incredible dubiosity" rule to impinge upon a jury's function to judge the credibility of a witness. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). According to this rule, if a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Id.* Application of this rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* Discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such

---

[3] Brownlee does not challenge the sufficiency of the evidence for Count III: Class C felony criminal confinement.

testimony incredibly dubious. *Holeton v. State*, 853 N.E.2d 539, 541-42 (Ind. Ct. App. 2006); *see also Stephenson v. State*, 742 N.E.2d 463, 498 (Ind. 2001) ("Although there were discrepancies among [the sole eyewitness's] statements . . . to police, his statements . . . in depositions, and his trial testimony, [trial] testimony that contradicts [the] witness's earlier statements does not make such testimony 'incredibly dubious.'"); *Reyburn v. State*, 737 N.E.2d 1169, 1171 (Ind. Ct. App. 2000) ("[T]he rule of incredible dubiosity concerns testimony, not statements made outside of trial or the courtroom.").

As the State concedes, there is a discrepancy in J.T.R.'s three statements as to whether Brownlee sucked or touched his penis. *See* Appellee's Br. p. 11. J.T.R. testified under oath—both at trial and during his deposition—that Brownlee touched his penis. However, J.T.R. told the interviewer at Susie's Place that Brownlee sucked his penis. Notably, defense counsel stipulated to the admissibility of J.T.R.'s deposition and his interview at Susie's Place as substantive evidence.[4] *See* Tr. p. 232, 380. Although this discrepancy impacts whether Brownlee is guilty of Class A or Class C felony child molesting, the jury was informed about the discrepancy by both defense counsel and the prosecutor. The prosecutor told the jury during closing argument that it had to decide whether Brownlee sucked or touched J.T.R.'s penis, and it gave the jury a plausible reason why J.T.R. would say suck to the interviewer at Susie's Place but not during the other two times: J.T.R. felt more comfortable during the interview at Susie's Place. Moreover, the incredible-dubiosity rule applies only to trial testimony. Brownlee has not identified any inconsistencies in J.T.R.'s trial testimony. Accordingly, we decline to invoke the

---

[4] Brownlee does not argue on appeal that J.T.R.'s deposition and interview at Susie's Place should not have been considered as substantive evidence under the Protected Person Statute.

9

incredible-dubiosity rule to impinge on the jury's evaluation of the evidence in this case and conclude from the evidence that a reasonable trier of fact could have found Brownlee guilty of Class A felony child molesting beyond a reasonable doubt.

## II. Credit-Restricted Felon

Brownlee next contends that the trial court erred in determining that he was a credit-restricted felon. Indiana Code section 35-31.5-2-72 defines a credit-restricted felon as a person who has been convicted of at least one of the following offenses:

> (1) *Child molesting involving* sexual intercourse, *deviate sexual conduct (IC 35-42-4-3(a), before its amendment on July 1, 2014) for a crime committed before July 1, 2014*, or other sexual conduct (as defined in IC 35-31.5-2-221.5) for a crime committed after June 30, 2014, if:
> > (A) the offense is committed by a person at least twenty-one (21) years of age; and
> > (B) the victim is less than twelve (12) years of age.

In addition, Indiana Code section 35-38-1-7.8 provides:

> (a) At the time of sentencing, a court shall determine whether a person is a credit restricted felon (as defined in IC 35-31.5-2-72).
> (b) A determination under subsection (a) must be based upon:
> > (1) evidence admitted at trial that is relevant to the credit restricted status;
> > (2) evidence introduced at the sentencing hearing; or
> > (3) a factual basis provided as part of a guilty plea.
> (c) Upon determining that a defendant is a credit restricted felon, a court shall advise the defendant of the consequences of this determination.

Depending on the credit class to which a defendant is assigned, a defendant may earn a statutorily specified amount of credit time for each day of incarceration, which can then reduce the amount of time the defendant is incarcerated. Ind. Code Ann. § 35-50-6-3 (West Supp. 2013); *Sharp v. State*, 970 N.E.2d 647, 649 n.4 (Ind. 2012). A defendant is initially assigned to Class I or IV depending on whether the defendant is a credit-restricted

10

felon. I.C. § 35-50-6-3(b), (e). "A person assigned to Class IV earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing," I.C. § 35-50-6-3(e), while "[a] person assigned to Class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing," I.C. § 35-50-6-3(b). A credit-restricted felon is automatically assigned to Class IV. Ind. Code Ann. § 35-50-6-4 (West 2012). After the initial assignment, a defendant can be reassigned to a more or less restrictive class or be deprived of any earned credit time depending on his compliance with certain rules and other factors. *Sharp*, 970 N.E.2d at 649 n.4 (citing Ind. Code Ann. §§ 35-50-6-4, -5 (West 2012)).

Brownlee argues that the credit-restricted felon statutes violate his right to trial by jury guaranteed by the Sixth Amendment of the United States Constitution because the statutes do not require a jury to determine whether the State has proven the elements beyond a reasonable doubt. Brownlee relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), for support.

These cases, however, are inapposite. The credit-restricted-felon statutes affect the credit time that a defendant receives against his sentence. Credit time is a bonus created by statute, and the deprivation of credit time does nothing more than take that bonus away. *State v. Mullins*, 647 N.E.2d 676, 678 (Ind. Ct. App. 1995). The deprivation of credit time does not lengthen the fixed term of a defendant's sentence. *Id.* At issue in both *Apprendi* and *Alleyne* was a fact that increased the penalty for a crime. The United States Supreme Court held that in such cases, those facts must be found by a jury beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2163; *Apprendi*, 530 U.S. at 490. Because Brownlee's credit-

11

restricted-felon status does not increase the penalty for his Class A felony conviction, but rather only impacts the credit time he receives against his sentence for that offense, his constitutional challenge fails.[5]  We therefore affirm the trial court.

Affirmed.

FRIEDLANDER, J. and MAY, J. concur.

---

[5] Brownlee also argues that the credit-restricted-felon statutes are "silent" as to the level of proof required for a court determination as to whether a defendant is a credit-restricted felon.  Appellant's Br. p. 7 n.1.  Brownlee points out that the child-molesting statute required J.T.R. to be under *fourteen* years old, while the credit-restricted-felon statute—which does not require a jury determination—required J.T.R. to be under *twelve* years old.  However, we do not decide cases on constitutional grounds when a case can be decided on other grounds.  Here, the evidence shows that J.T.R. was eight years old at the time of trial, and Brownlee never disputed his age.  Because the State proved J.T.R.'s age beyond a reasonable doubt at trial, this argument likewise fails.