## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 21 2019, 5:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin Cherry,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 21, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2120<br><br>Appeal from the Putnam Circuit Court<br><br>The Honorable Matthew L. Headley, Judge<br><br>Trial Court Cause No.<br>67C01-1706-F1-156 |

**May, Judge.**

[1] Justin Cherry appeals his convictions of Level 2 felony burglary,[1] Level 2 felony conspiracy to commit burglary,[2] Level 1 felony burglary,[3] Level 3 felony conspiracy to commit armed robbery,[4] Level 3 felony criminal confinement,[5] Level 6 felony theft,[6] Level 6 felony auto theft,[7] and two counts of Level 3 felony armed robbery.[8] Cherry argues there was insufficient evidence to place him at the scene of the crimes, there was insufficient evidence to prove he conspired to commit armed robbery or burglary, and numerous convictions violate his constitutional right to be free of double jeopardy. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Around 4 a.m. on April 2, 2017, Terry McCarter heard a loud noise toward the front of his house. Terry and his wife, Patsy McCarter, were in bed at the time. Upon hearing the noise, Terry went to investigate. Terry was confronted in his

---

[1] Ind. Code § 35-43-2-1(3) (2014).

[2] Ind. Code § 35-41-5-2 (2014) (conspiracy); Ind. Code § 35-43-2-1(3) (2014) (burglary).

[3] Ind. Code § 35-43-2-1(4) (2014).

[4] Ind. Code § 35-41-5-2 (2014) (conspiracy); Ind. Code § 35-42-5-1(1) (2014) (robbery).

[5] Ind. Code § 35-42-3-3(b)(2) (2014).

[6] Ind. Code § 35-43-4-2(1)(A) (2014).

[7] Ind. Code § 35-43-4-2.5(b)(1) (2014).

[8] Ind. Code § 35-42-5-1(1) (2014).

dining room by a masked man with a gun. The man ordered Terry to lay face down on the floor.

[3]     Three more men came into the house, and one of them held Terry at gunpoint. Another man went to the bedroom, pointed a gun at Patsy, and said "we're going to rob you." (Tr. Vol. II at 176.) The man stuffed all of Patsy's jewelry into a pillow case. He then took the jewelry and a safe he found out of the room, before returning and ransacking the room. The man ordered Patsy out of bed and flipped the mattress. The man found a gun on the nightstand and took it. Because the man was covered from head to toe in black clothing, Patsy was not able to describe any identifying characteristics of the robber, but she noticed he was wearing unique gloves with white patterns. While Patsy was being held in the bedroom, and Terry was being held in the dining room, the other two men searched the rest of the house and stole everything of value. Terry heard one of the men refer to another as "Dustin or Justin or something like that." (*Id.* at 159.)

[4]     From the house, the men stole $500 from Terry's wallet, $6,000 from the McCarters' small business that was stored in a desk, $200 from Patsy's purse, a .223 rifle, an antique musket loader, a .22 rifle, a single shot shotgun, a leaded-glass clock, multiple prescription medications, Patsy's jewelry, the safe, and the handgun from the bedroom. From the McCarters' barn, the men took a chainsaw, a tool set, and some smaller personal items. From the garage, the men took an air compressor and some drills.

[5]     After about an hour, when the men had finished plundering the McCarters' property, the men ordered Terry and Patsy into a sunroom adjoining their bedroom. The men demanded to know where their "stash" was. (Tr. Vol. II at 143.) Then, one of the men hit Terry in the back of the head with the butt of a rifle, knocking Terry unconscious. The men locked Terry and Patsy in the sunroom.

[6]     When Terry awoke, he and Patsy watched the four men walk to their garage and steal their 2003 Buick Rendezvous. After the men left, Terry escaped the sunroom through an unlocked, second entrance. He went to the garage, found his cell phone, and drove the couple's other car to a location with sufficient cell service to call police. Officers responded and began their investigation. On a ramp leading up to the garage, police found a shoe print not belonging to Terry or Patsy.

[7]     Terry was evaluated by paramedics but opted not to go to the hospital. The back of Terry's head turned black and blue. Three days after the robbery, Terry began to have severe headaches that continued to worsen. A nearby hospital diagnosed him with hemorrhaging near the brain. Terry was transferred to St. Vincent Hospital in Indianapolis, where the doctors determined the bleeding had stopped. Terry was told he had a large amount of blood on his brain and would continue to have headaches. After going home, Terry's condition worsened. He returned to St. Vincent Hospital where the doctors discovered the bleeding had begun again. Terry underwent surgery and spent five days in the hospital recovering.

[8]     A few days after the burglary, in Indianapolis, Christina Blair noticed a suspicious vehicle parked along the street outside her home. The driver appeared to be waiting until nobody was watching before he exited the car. Blair watched as the man exited the car and went to a house at 3835 Spann Avenue, which recently had been the site of police activity. Blair walked up to the car and noticed it had a handicapped license plate, despite the man not appearing to be handicapped. Blair reported the vehicle to the police.

[9]     The officer responding to Blair's call ran the car's plates. He discovered it was the vehicle stolen from the McCarters. The officer surveilled the vehicle for a while, and eventually he had it impounded. The vehicle was transported to the Putnam County Sheriff's Department, where it was searched. Police found a receipt from a McDonald's restaurant on Southeastern Avenue in Indianapolis, and the receipt had a timestamp after the robbery. Deputy McFadden of the Putnam County Sheriff's Department travelled to Indianapolis and drove past the home at 3835 Spann Avenue to gather information. Deputy McFadden drove behind the home and noticed the garage partially open. A man, later identified as Justin Cherry, came out of the garage and watched Deputy McFadden drive by.

[10]     On April 9, 2017, officers with the Indianapolis Metropolitan Police Department ("IMPD") executed a search warrant at 3835 Spann Avenue. In the garage, the police discovered pill bottles with the names of Terry and Patsy McCarter on them. Officers also seized a phone belonging to Daltyn Randolph, one of the home's occupants.

[11] Deputy McFadden obtained his own warrant to search the 3835 Spann Avenue. IMPD officers secured the residence and ordered everyone out. After a delay, Daltyn Randolph, Steven Cosand, Michael Hostetler and Ronnie Sosby exited. Thirty minutes after those four exited, Cherry surrendered. Cherry's boots were removed and compared to the print found at the McCarter's home. In one of the bedrooms, deputies found multiple pieces of mail addressed to Cherry, along with pictures of Cherry and his daughter, and a safe containing pieces of jewelry belonging to Patsy. In an airduct in the same bedroom, police recovered the .38 handgun taken from the McCarter's nightstand. Police also recovered a cell phone belonging to Cosand while searching the house.

[12] On May 10, 2017, IMPD officers executed a search warrant on a storage unit rented by a girlfriend of Paul Reese, who was another suspect being investigated by police. The storage unit contained multiple items belonging to the McCarters. Police obtained search warrants for both of the phones they found at 3835 Spann Avenue. A search of Randolph's phone revealed three contacts: Justin, Paul, and Drake. There was also a web search for "Couple held at gunpoint for an hour during home invasion." (Tr. Vol. III at 38.) A search of Cosand's phone revealed the same three contacts. The contact information for "Justin" matched a number Cherry had previously provided to a "state government official." (Tr. Vol. III at 134.)

[13] Using the information obtained, police secured a search warrant for cell phone records connected to Cherry's phone number. The information showed Cherry travelled west on Interstate 70 on April 1 around 8:30 p.m. By 9:20 p.m.,

Cherry's phone pinged on towers near Greencastle, Indiana, until 10:00 p.m. The information also showed Cherry was in communication with Charles Maybaum by way of multiple text messages and phone calls on April 1.

Cherry was arrested and charged with Level 2 felony burglary, Level 2 felony conspiracy to commit burglary, Level 1 felony burglary with serious injury, Level 3 felony conspiracy to commit armed robbery, Level 3 felony criminal confinement, Level 6 felony theft, Level 6 felony auto theft, and two counts of Level 3 felony armed robbery. A jury found Cherry guilty of all nine counts. The trial court sentenced Cherry on all nine counts to an aggregate sentence of seventy-three years in prison.

# Discussion and Decision

## Sufficient Evidence

Cherry argues the State provided insufficient evidence to convict him of any of his nine convictions. When considering the sufficiency of evidence, "a reviewing court does not reweigh the evidence or judge the credibility of the witnesses." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* at 126 (internal citation omitted).

## Identification

To convict Cherry of burglary, criminal confinement, theft, auto theft, or armed robbery, the State had to prove Cherry was at the scene. *See S.M. v. State*, 74 N.E.3d 250, 254 (Ind. Ct. App. 2017) (identification of defendant established guilt beyond reasonable doubt). Cherry contends the State had only circumstantial evidence, and that evidence does not create a reasonable inference that Cherry was involved in the crimes. "Where the evidence of guilt is essentially circumstantial, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Whitney v. State*, 726 N.E.2d 823, 825 (Ind. Ct. App. 2000).

The State provided cellphone data showing Cherry's locations. Prior to the burglary, cellphone data showed Cherry traveling from Indianapolis to Greencastle. Cherry's phone returned to Indianapolis the next morning several hours after the burglary. A boot print found at the scene was the same size and bore the same characteristics as boots worn by Cherry. Patsy McCarter identified gloves found in Cherry's room as the gloves her captor wore. Finally, when searching Cherry's bedroom, police found the McCarters' handgun, safe, and jewelry. Despite the McCarters being unable to identify Cherry as one of the men at the scene, it is reasonable to infer Cherry was there and involved in the criminal acts that took place on April 2. *See Parsley v. State*, 119 N.E.3d 131, 140 (Ind. Ct. App. 2019) (holding circumstantial evidence was enough to find the defendant guilty), *trans. denied.*

## *Evidence of Conspiracy*

[18] Cherry also argues the State had insufficient evidence of him being part of a conspiracy to convict him of conspiracy to commit burglary or conspiracy to commit armed robbery. "A person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony." Ind. Code § 35-41-5-2. In order to convict Cherry of these two crimes, the State needed to show Cherry knowingly conspired with Charles Maybaum, Paul Reese, and/or Daltyn Randolph to commit burglary and armed robbery, respectively.

[19] Cherry argues the State does not have any evidence of any agreement. "The State is not required to present evidence of an express agreement." *Drakulich v. State*, 877 N.E.2d 525, 531-32 (Ind. Ct. App. 2007), *trans. denied*. "An agreement can be inferred from circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act." *Dickenson v. State*, 835 N.E.2d 542, 552 (Ind. Ct. App. 2005), *trans. denied*. Cellphone data from Cherry, Maybaum, Reese, and Randolph showed all four travelled to Greencastle on April 1. In addition, the cellphone data showed communication between the four of them on April 1 in the hours leading up to the burglary.

[20] Cherry argues the State failed to prove Cherry was in possession of his own cellphone on the night in question. We have already found sufficient evidence of Cherry being at the McCarter's home in the early morning of April 2, 2017. Because the cellphone data showed Cherry travelled to Greencastle on April 1 and the evidence demonstrates Cherry was at the McCarters' home during the

burglary, it reasonably can be inferred Cherry was in possession of his own cellphone and was communicating with the others in regard to their plans to commit burglary and armed robbery. *See Meehan v. State*, 7 N.E.3d 255, 259 (Ind. 2014) (evidence a jury could infer guilt from is sufficient for a conviction).

## Double Jeopardy

[21] Cherry next argues his nine convictions violate his constitutional right to be free from double jeopardy. *See* Ind. Const. art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). Two offenses are the "same offense" in violation of Indiana's Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

[22] We review *de novo* whether a defendant's convictions violate this provision. *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000), *reh'g denied*. "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not,

one of the convictions must be vacated." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (modification as to cases involving hung jury or acquittal).

### Burglary Resulting in Serious Bodily Injury and Burglary

[23] Cherry argues his convictions of both burglary counts violate the "actual evidence" test and the *Blockburger* test for same offense. The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. To determine what facts were used to convict, we consider the charging information, the final jury instructions, the evidence, and the arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied*.

[24] The single burglary used to satisfy both counts took place on April 2 at the McCarter's home. To convict Cherry of Level 2 felony burglary, the State had to prove: (1) Cherry (2) broke and entered into a building or structure of another person, (3) with the intent to commit a felony of theft in it (4) while armed with a deadly weapon or resulting in serious bodily injury to any person other than the defendant. Ind. Code § 35-43-2-1(3)(A)(B). This becomes a Level 1 felony if the "building or structure is a dwelling; and [the crime] results in serious bodily injury to any person other than the defendant." Ind. Code § 35-43-2-1(4)(A)(B). The State concedes these two convictions violate double jeopardy because the jury had to rely on the same evidence when convicting Cherry of Level 2 felony burglary as they would for Level 1 felony burglary. *See Bradley v. State*, 113 N.E.3d 742, 755 (Ind. Ct. App. 2018) (convictions reversed when

reasonably possible jury relied on the same acts for convictions). Accordingly, we vacate Cherry's conviction of Level 2 felony burglary.

### *Conspiracy to Commit Burglary and Conspiracy to Commit Armed Robbery*

[25] "A person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same level as the underlying felony." Ind. Code § 35-41-5-2(a) (2014). Cherry again argues these convictions violate the "actual evidence" test. The State used cellphone data to demonstrate Cherry conspired with at least one other person; however there is no specific evidence showing which crime Cherry conspired to commit or separate communications to demonstrate both. The State again concedes these two convictions violate double jeopardy because the jury had to rely on the same evidence when convicting Cherry of Level 2 conspiracy to commit burglary as it would for Level 3 felony conspiracy to commit armed robbery. *See Bradley*, 113 N.E.3d at 755 (convictions reversed when reasonably possible jury relied on the same acts for convictions). Accordingly, we vacate Cherry's conviction of Level 3 felony conspiracy to commit armed robbery.

### *Armed Robbery and Armed Robbery*

[26] Cherry next argues that, although there were two victims, there was only one act of armed robbery. Cherry believes there was only one act of armed robbery because both robberies occurred in the same house at the same time. "The continuing crime doctrine essentially provides that actions that are sufficient in

themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2005), *trans. denied*.

[27] One count of armed robbery was charged for the crime against Terry McCarter. (App. Vol. II at 53.) When Terry went to investigate the noise he heard, he was ordered to lay on the ground and held at gunpoint. The other count was charged for the crime against Patsy McCarter. (App. Vol. II at 54.) Patsy was still in bed when she was held at gunpoint while one of the men stole her jewelry. Patsy was in a separate section of the house away from her husband, and they were held at gunpoint by different men. While both armed robberies did happen close together in time and in the same residence, the acts are separate and distinct from each other. *See Borum v. State*, 951 N.E.2d 619, 630 (Ind. Ct. App. 2011) (continuity of defendant's actions did not negate the fact there were different criminal acts committed at different times). Accordingly, Cherry could be convicted of both crimes.

### Armed Robbery, Theft, and Auto Theft

[28] Cherry next argues his convictions of armed robbery, theft, and auto theft violate double jeopardy. Cherry again argues these convictions violate the actual evidence test. The elements of Level 3 felony armed robbery require proof (1) the defendant; (2) knowingly or intentionally; (3) took property; (4) from another person or from the presence of another person; (5) by using or threatening the use of force; (6) while armed with a deadly weapon. Ind. Code

§ 35-42-5-1(a). The elements for Level 6 felony theft are: (1) the defendant; (2) knowingly or intentionally; (3) exerted unauthorized control; (4) over the property of another person; (5) with intent to deprive the other person of any part of its value or use; and (6) the value of the property is at least $750 and less than $50,000. Ind. Code § 35-43-4-2(a). The elements of auto theft include: (1) a defendant; (2) knowingly or intentionally; (3) exerted unauthorized control; (4) over the property of another person; (5) with intent to deprive the other person of any part of its value or use; and (6) the property at issue is a motor vehicle as defined under Indiana Code Section 9-13-2-105(a). Ind. Code § 35-43-4-2(a)(1)(B).

[29] In its closing argument, the State mentioned the Buick Rendezvous as fulfilling a required element of both theft and auto theft. As to theft, the prosecutor said: "Count 6, theft. In Indiana, theft has to be more than $750 for this count and less than $50,000. . . . All of her jewelry, the Rendezvous was taken, the guns were taken." (Tr. Vol. III at 234-235.) When explaining auto theft, the prosecutor said "obviously the Buick Rendezvous was taken . . . so we get auto theft." (*Id*. at 235.) Additionally, the jury instruction for theft did not specify which evidence supported that conviction. Because the State argued the Buick Rendezvous was evidence to satisfy both theft and auto-theft, it is reasonable to believe the jury could have relied on it to support both convictions.

[30] The State argues that although the statutes for Level 6 felony theft and Level 3 felony armed robbery are similar, each crime had a separate element that needed to be proven in order to convict Cherry. Cherry, on the other hand,

argues theft "is an element of robbery, because robbery requires the taking of property." (Appellant Br. at 28-29.) In closing argument, the State explained, armed robbery "is you take property by the use of force or threaten the use of force." (Tr. Vol. III at 234.) The State did not separate the evidence taken during the theft from the evidence taken during the armed robbery. The State simply asserted property was taken from the McCarters while they were held at gunpoint. Because the statute required the same element of taking of property and the State did not distinguish separate acts, the actual evidence test was again violated. *See Clark v. State*, 732 N.E.2d 1225, 1229 (Ind. Ct. App. 2000) (vacating two attempted arson convictions when all three convictions were based on one act).

[31] Because the State did not distinguish the specific evidence that supported each of the three separate charges, we must vacate the convictions of Level 6 felony theft and Level 6 felony auto theft.

### *Criminal Confinement and Armed Robbery*

[32] Cherry's final argument is that convictions of both criminal confinement and armed robbery violates double jeopardy. Cherry claims his convictions violate the actual evidence test. The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. To determine what facts were used to convict, we consider the charging information, the final jury instructions, the evidence, and the arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied*.

[33] In order to convict Cherry of criminal confinement, the State had to prove Cherry "knowingly or intentionally confined another person without the other person's consent." Ind. Code § 35-42-3-3 (2014). This becomes a Level 3 felony if it is committed with a deadly weapon. When reviewing the count of criminal confinement at closing the prosecutor explained where and how the McCarters were confined. "They were confined on the porch. One was on the dining room floor, held at gunpoint, one was on the bed in the bedroom. They were confined." (Tr. Vol. III at 234.) The jury instruction for criminal confinement does not inform the jury where the confinement occurred. Instead, it states "the Defendant did knowingly or intentionally confine Terry and Patsy McCarter without their consent, while armed with a deadly weapon, to-wit: a firearm." (App. Vol. II at 123.)

[34] In order to convict Cherry of armed robbery, the State presented evidence of Terry McCarter being held at gunpoint on the dining room floor and Patsy being held at gunpoint while she was in bed. The prosecutor explicitly told the jury it could rely on Terry and Patsy being held at gunpoint to support both armed robbery and criminal confinement. Although the McCarters were also locked on their porch, neither the prosecutor nor the jury instruction singled out that evidence as the only evidence supporting the confinement charge. As there is a reasonable probability the jury relied on the McCarters being held at gunpoint to find Cherry guilty of all three counts, we must vacate his confinement conviction. *See D.J. v. State*, 88 N.E.3d 236, 242 (Ind. Ct. App.

2017) (acts used to convict defendant of armed robbery cannot be used to support a conviction of criminal confinement).

### *Double Jeopardy Conclusion*

[35]     Cherry's conviction of Level 2 felony burglary must be vacated because it rested on the same evidence as Cherry's conviction of Level 1 felony burglary, and Cherry's conviction of Level 3 felony conspiracy to commit armed robbery must be vacated because it rested on the same evidence as Cherry's conviction of Level 2 felony conspiracy to commit burglary. Cherry's convictions of Level 6 felony theft and Level 6 felony auto theft must be vacated due to the State's failure to clarify for the jury which specific evidence supported each charge. Finally, we must vacate Cherry's conviction of Level 3 felony criminal confinement because of the probability the jury relied on the same acts of confinement to support the convictions of Level 3 felony armed robbery.

[36]     Thus, Cherry remains convicted of Level 1 felony burglary, Level 2 felony conspiracy to commit burglary, and two counts of Level 3 felony armed robbery.

# Conclusion

[37]     The evidence demonstrates Cherry was at the McCarters home and was involved in the criminal acts that took place. In addition, cellphone data revealing Cherry's communications with a co-perpetrator leading up to the

crime support his conviction of conspiracy. Therefore, there is sufficient evidence to find Cherry guilty on all counts.

[38] However, to avoid subjecting Cherry to double jeopardy, we must vacate his convictions of Level 2 felony burglary, Level 3 felony conspiracy to commit armed robbery, Level 3 felony criminal confinement, Level 6 felony theft, and Level 6 felony auto theft. We remand for the trial court to resentence Cherry for his remaining convictions.[9]

[39] Affirmed in part, reversed in part, and remanded.

Baker, J., and Tavitas, J., concur.

---

[9] As we vacate five of Cherry's convictions and the trial court will be resentencing Cherry for his four remaining convictions, we need not address the appropriateness of the seventy-three-year sentence imposed for Cherry's nine convictions.